**TOWN OF SMYRNA and the State of Tennessee, ex rel. Neal R. Odom, Plaintiffs-Appellees,**

v.

**J. Sam RIDLEY, Defendant-Appellant.**

Supreme Court of Tennessee, at Nashville.

May 6, 1987.

---

Henry Haile, Nashville, for plaintiffs-appellees.

Granville S.R. Bouldin, Murfreesboro, Lee Russell, Shelbyville, for defendant-appellant.

## OPINION

BROCK, Chief Justice.

This is an action in the nature of *quo warranto* by the District Attorney General on behalf of the State as provided by T.C.A., § 29–35–101, *et seq.*, seeking to remove the defendant from the office of Mayor of Smyrna, Tennessee, and to recover a forfeiture of the sums which he has received in violation of T.C.A., § 12–4–101 *et seq.*, which forbids conflicts of interest by public officials. Joined with this *quo warranto* proceeding is an action brought by a private citizen, Neil R. Odom, on behalf of the town of Smyrna seeking to recover from the defendant the forfeiture provided by T.C.A., § 6–54–107 *et seq.*, a conflict of interest statute limited to officials of municipal corporations.

The basis of the District Attorney's *quo warranto* action is found in the following statutory provisions:

> 12-4-101. *Personal interest of officers prohibited.*—It shall not be lawful for any officer, committeeman, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend, any work or any contract in which any municipal corporation, county, state, development districts, utility districts, human resource agencies, and other political subdivisions created by statute shall or may be interested, to be directly or indirectly interested in any such contract.

> 12-4-102. *Penalty for unlawful interest.*—Should any person acting as such officer, committeeman, director, or other person referred to in § 12-4-101, be or become directly or indirectly interested in any such contract, he shall forfeit all pay and compensation therefor. Such officer shall be dismissed from such office he then occupies, and be ineligible for the same or a similar position for ten (10) years.

The action of Odom on behalf of the town is based upon the following statutory provisions:

> 6-54-107. *Contracts with officers prohibited.*—No person holding office under any municipal corporations shall, during the time for which he was elected or appointed, be capable of contracting with such corporation for the performance of any work which is to be paid for out of the treasury. Nor shall such person be capable of holding or having any interest in such contract either by himself or by another, directly or indirectly.

> 6-54-108. *Liability of officer contracting.*—Every officer of such corporation who shall be concerned in making such contract, or who shall pay money upon the same to or for any person declared incapable in § 6-54-107 shall forfeit the amount so paid; and they shall be jointly and severally liable to an action for the same, which action may be prosecuted by any citizen of the corporation in its name.

The prayer of the complaint was for: (1) removal of the defendant from office; (2) a complete accounting by defendant for every transaction between the town and himself or any business entity in which he was interested since 1947; (3) an order of restitution of all sums received by him under forbidden contracts; and (4) an order of forfeiture of all sums paid by the town to defendant or his business interests pursuant to forbidden contracts.

The defendant, J. Sam Ridley, has been Mayor of Smyrna, Tennessee, since 1947. During that time the defendant was engaged in a private automobile dealership business as a partner with his brother and, at times, a major stockholder of a corporation which succeeded the partnership as owner of the dealership. The plaintiffs claim that he has violated the above-mentioned conflict of interest statutes by selling motor vehicles to the city and by repairing and servicing the city's vehicles at his Chevrolet dealership in Smyrna. The plaintiffs also allege that the Mayor had used a Master Charge Card, provided to him by the city, to pay personal expenses that were unrelated to city business.

The evidence showed that from 1972 through 1978 the town of Smyrna had purchased approximately 20 or more automobiles and trucks. All but one of these had been transferred from Ridley Chevrolet which at that time was a partnership between Mayor Ridley and his brother, to Jackson Brothers Chevrolet in Murfreesboro, located in the same county as Smyrna, which then sold these vehicles to the city of Smyrna, usually on the very same day that they were received from Ridley. The General Manager of Ridley Chevrolet, G.B. Rheinscheld, testified, explaining how these transactions were conducted and indicating that he prepared the bids for Jackson Brothers to submit to the city. There was also testimony that Ridley Chevrolet had sold a used truck to another local used car dealer who then transferred the truck to the city.

It is the theory of the plaintiffs that these transactions were designed to conceal the fact that the defendant's dealership

was selling vehicles to the city; however, the jury made findings of fact that Ridley Chevrolet did not sell any of the listed vehicles to the city.

On two other issues, however, the jury found in favor of the plaintiffs and against Mayor Ridley. The proof showed that numerous payments had been made over several years by the town of Smyrna to Ridley Chevrolet for parts, repairs, servicing and maintenance of the city's vehicles. The defendant unsuccessfully argued that these services were a necessity in that it was essential that they be performed immediately and could not have been performed by anyone else. Mayor Ridley's was the only Chevrolet dealership in town and its Service Department was open 24 hours a day.

The jury further found that the defendant Mayor had used the city's credit cards to make purchases for his personal expenses unconnected with the city's business such as visits to his daughter in Texas, attending the Southern Baptist Convention, travelling to Florida on vacation, and buying family meals at restaurants. Mayor Ridley defended these purchases by simply stating that he only used the city card on city business, claiming that he was on duty for the city 24 hours a day. His defense to the entire case, in fact, consisted primarily of character witnesses and an attempt to show that the relator, Odom, did not like him.

Confirming the findings of fact made by the jury on certain submitted issues, the Chancellor decreed that Mayor Ridley be dismissed from his office as Mayor and Commissioner and be ineligible to serve in that position for 10 years and that he forfeit the portion of the payments he received for the vehicle servicing and maintenance. Moreover, based upon the report of the Special Master appointed to determine the amount that should be forfeited under T.C.A., § 12-4-102 and § 6-54-108, the Chancellor held Mayor Ridley should pay to the city of Smyrna the sum of $11,145.96. Upon appeal, the Court of Appeals affirmed the judgment removing the defendant from office but it reversed the money judgment, holding that the defendant had been deprived of his constitutional right to have a jury determine the amount of the forfeiture.

The first question for our decision is whether or not the defendant was deprived of a right to trial by jury in this case. He demanded a jury trial in his answer and he insists that he was entitled under Article 1, § 6 of the Constitution of Tennessee to a jury trial and a general verdict. The Chancellor impaneled a jury but submitted only certain issues of fact to the jury and referred other questions such as the amount of the forfeiture, if any, to a special master.

The Court of Appeals held that the defendant was not deprived of a right to trial by jury of the issues based upon T.C.A., § 12-4-102, but that he had a constitutional right to trial by jury to determine the amount of forfeiture based on T.C.A., § 6-54-108, and that he had been deprived of this right.

Article 1, § 6 of the Tennessee Constitution guarantees to the defendant the right of trial by jury as it existed under the common law in effect in Tennessee at the time of the adoption of the Tennessee Constitution in 1796; but, there is no right under this provision to a jury trial in an action that is equitable in nature unless it was triable by jury when the Constitution was adopted. *Harbison v. Briggs Bros. Paint Mfg. Co.*, 209 Tenn. 534, 354 S.W.2d 464, 467–68 (1962). However, the legislature has granted a right to trial by jury in certain chancery cases as follows:

T.C.A. § 21-1-103. *Right to trial by jury.*—Either party to a suit in chancery is entitled, upon application, to a jury to try and determine any material fact in dispute, save in cases involving complicated accounting, as to such accounting, and those elsewhere excepted by law or by provisions of this Code, and all the issues of fact in any proper case shall be submitted to one jury.

Actions based upon violations of T.C.A., § 12-4-101 *et seq.* are governed by the procedure set out in T.C.A., § 29-35-101 *et seq.* in pertinent part, as follows:

29–35–101.—An action lies in the name of the state against the person or corporation offending, in the following cases:

\* \* \* \* \* \*

(2) Whenever any public officer has done, or suffered to be done, any act which works a forfeiture of his office;
. . .

29–35–111.—The suit is brought by bill in equity, filed in either the circuit or chancery court of the county in which the office is usurped or held, or the corporation or supposed corporation holds its meetings or has its principal place of business.

29–35–112.—(a) The bill shall set forth briefly, and without technical forms, the grounds upon which the suit is instituted. (b) The suit shall be conducted as other suits in equity.

\* \* \* \* \* \*

29–35–115. Such issues of fact as may become necessary to try by jury in the progress of the cause shall be made up under the direction of the court, and submitted to a jury impaneled forthwith.

■ Following this equity procedure, the Chancellor was correct in limiting the issues of fact submitted to the jury and in refusing to submit to the jury the task of determining the amount of the forfeiture incurred. To make that determination involved a complicated accounting of hundreds of transactions extending over many years which, under T.C.A., § 21–1–103, was properly withdrawn from the jury and submitted to a special master. The defendant had no right, constitutional or statutory, to a jury determination of that issue. Nevertheless, the Court of Appeals has held that the defendant was deprived of a right to a jury trial and has reversed the money judgment for a forfeiture based upon the Special Master's report and has remanded that issue for a new trial. We hold this to be error.

■ The theory of the Court of Appeals was that in this proceeding we are trying two separate actions, an action in the nature of *quo warranto*, based upon T.C.A., § 12–4–101 *et seq.*, and a second action for debt brought by relator Odom on behalf of the city of Smyrna, based upon T.C.A., § 6–54–107 *et seq.;* and, that the defendant was entitled to a constitutional right to a jury trial of the second action, although not to the first. Perhaps the complaint is susceptible to that construction but, if so, the T.C.A., § 6–54–107 action must be dismissed. The city cannot recover two forfeitures, one under T.C.A., § 12–4–102 and the other under T.C.A., § 6–54–108. In either case, the money forfeited belongs to the city, but it is not due a double recovery. We find no legislative intent for such a double penalty and forfeiture in the circumstances of this case. These statutes were intended to provide alternative remedies. *See: Hope v. Hamilton County,* 101 Tenn. 325, 47 S.W. 487, 488 (1898).

■ This misjoinder was pointed out by the defendant in a motion to dismiss, his first defensive pleading, as follows:

1. The complaint improperly joins an action in the name of the town of Smyrna purporting to seek restitution over which the Attorney-General has no control, with a quo warranto action, in the name of the State of Tennessee, over which the District Attorney by law has absolute control.

The Chancellor erred in overruling this ground of the motion to dismiss. The *quo warranto* action by the State affords complete relief in this case and must take precedence over the § 6–54–107 action by the city; the latter should have been dismissed. The error is so plain that we notice it now and dismiss the complaint insofar as it seeks to join the "action of debt" under T.C.A., § 6–54–107 *et seq.* with the *quo warranto* under T.C.A., § 12–4–101 *et seq.*

Clearly, therefore, there was no right to a jury trial of the amount of the forfeiture by the defendant to the city and, thus, no need for a remand for a new trial. The Chancellor's money judgment award for the forfeiture should be affirmed.

The next question for our consideration is the applicable statute of limitations for this action. The Chancellor held the six

years statute in T.C.A., § 28–3–109(3) to be applicable. The majority of the Court of Appeals held that the one year statute, T.C.A., § 28–3–104(a), was the proper one; Judge Koch was of opinion that no statute of limitations applied.

 We hold that an action to enforce the sanctions imposed by T.C.A., § 12–4–102, is one "... not expressly provided for," and, thus, is controlled by the ten years statute contained in T.C.A., § 28–3–110(3). *See: People, ex rel. Fitzgerald v. Boyd,* 132 Ill. 60, 23 N.E. 342 (1890). In our opinion this action is not one for a statutory penalty governed by the one year statute, T.C.A., § 28–3–104(a). *See: Woodward v. Alston,* 59 Tenn. 581 (1873); nor is it one "on a contract," governed by the six years statute, T.C.A., § 28–3–109(3).

 The relator's private attorney seeks an award of attorney's fees for prosecuting this proceeding. We affirm the denial of that claim by the lower courts. The common fund doctrine does not apply here. *Southern v. Beeler,* 183 Tenn. 272, 195 S.W.2d 857, 870 (1946); *Marion County v. Rives & McChord,* 133 Ky. 477, 118 S.W. 309, 312 (1909).

The plaintiff argues that he was entitled to a directed verdict on his claims based on the purchase of the vehicles and the repairs and servicing.

 A motion for directed verdict is appropriate when the proof is such that reasonable minds can draw only one conclusion. *Holmes v. Wilson,* 551 S.W.2d 682, 685 (Tenn.1977). In the case of the vehicle sales, the exact nature of the transfers and Ridley's role in them was in dispute even though it seems difficult to find, as the jury did, in the defendant's favor. The proof regarding the servicing and repairs was disputed as to the issue of immediate necessity and the availability elsewhere of these services. *See: Crass v. Walls,* 36 Tenn.App. 546, 259 S.W.2d 670, 674 (1953). There was no error in overruling the plaintiff's motion for a directed verdict.

We have reviewed other assignments of error and found them to be without merit.

The judgment of the Court of Appeals awarding a new trial is reversed. We remand this case to the trial court for such further proceedings, if any, as may be appropriate and consistent with our opinion herein. Costs are taxed against defendant-appellant.

FONES, COOPER and HARBISON, JJ., and CORNELIUS, Special Justice, concur.